**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL TYRONE SOMERVILLE
a/k/a Big Mike,

    Defendant - Appellant.

No. 05-1308

(D. Colorado)

(D.C. No. 04-CR-185-REB)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK** , Circuit
Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a jury trial, Michael Tyrone Somerville was found guilty of four counts of distribution of five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 324 months' imprisonment. He appeals his sentence, which we affirm.

## BACKGROUND

In a series of controlled buys in Colorado Springs, Colorado, a confidential informant, Anthony Johns, purchased crack cocaine from Somerville. Specifically, on May 6, 2003, Johns met Somerville in the parking lot of a fast-food restaurant and purchased from Somerville 12.7 net grams of crack cocaine. Johns subsequently bought from Somerville 25.9 grams of crack cocaine on May 7, 2003, 24.5 grams of crack cocaine on January 16, 2004, and 47.2 grams of crack cocaine on February 6, 2004. [1] Law enforcement authorities arrested Somerville a few hours after this last sale. During the execution of a federal search warrant at Somerville's residence on February 6, 2004, law enforcement authorities found numerous rounds of live ammunition.

---

[1]Ultimately 150.1 grams of crack cocaine or its equivalent were attributed to Somerville. This included some crack cocaine found in a bag Somerville had at the time of his arrest and some crack cocaine Somerville sold to another individual just prior to Somerville's arrest.

During his trial, both Somerville and the confidential informant, Johns, testified. Concerning the January 16, 2004, drug transaction, Johns testified that he saw a .40 caliber weapon at the residence where the controlled buy took place and where Somerville was cooking crack cocaine. Johns also surreptitiously recorded the conversation he had with Somerville during that transaction. That recording was played to the jury. [2]

After the jury returned its guilty verdict, sentencing proceedings commenced. The probation office prepared a presentence report ("PSR"), which calculated Somerville's base offense level as thirty-four, which it recommended increasing by two levels, pursuant to United States Sentencing Commission, Guidelines Manual ("USSG"), §2D1.1(b)(2) (Nov. 2004), because Somerville possessed a dangerous weapon during the January 16, 2004, drug transaction, and by another two levels, pursuant to USSG §3C1.1, because Somerville obstructed justice. This latter allegation was based upon Somerville's testimony at trial and

---

[2]The record on appeal contains neither a copy of the audio tape of the conversation, nor a transcription of it. However, the government's brief contains an excerpt from the transcription, and Somerville does not dispute the accuracy of the government's excerpt. We therefore assume that it accurately reflects the conversation between Johns and Somerville. Moreover, we note that the district court heard the audio tape and presumably read the transcription. Somerville argues that we should reverse the district court's firearm possession enhancement because the tape of the conversation between himself and Johns was "confusing." Appellant's Op. Br. at 6. He has significantly undermined his ability to make that argument because he has failed to include the tape or a transcript of it in the record before us.

upon statements he had made to the police during its investigation into this case. These enhancements resulted in a total offense level of thirty-eight. All parties agreed that, as the PSR stated, Somerville qualified as a career offender under USSG §4B1.1(a) because of several prior felony convictions for controlled substance offenses, although, because his basic Guideline sentencing range was more severe, that Guideline sentencing range applied rather than the career offender provisions. The PSR also calculated a criminal history category of IV. This yielded an advisory Guideline sentencing range of 324 to 405 months. The PSR recommended a sentence of 324 months, followed by five years of supervised release.

Somerville filed objections to the PSR, arguing that there was "no evidence that he lied at trial, nor did he provide 'materially false information to a judge.'" Objections by the Def., PSR add. at A-1, R. Vol. XI. Additionally, Somerville asserted that "[a]s the Court heard the testimony at trial, it is in a better position than the probation officer to determine the applicability of this adjustment." Id. Somerville also objected to the two-level increase for possession of the firearm during the January 16, 2004, drug transaction, arguing there was "insufficient evidence" and again deferring to the district court's better ability, as compared to the probation office, to assess the applicability of this enhancement. Id.

Somerville filed another objection to the PSR, reiterating the above objections and more fully explaining why he felt he had not obstructed justice.

The district court overruled his objection to the obstruction of justice enhancement, stating the following:

> I presided over all pretrial and trial proceedings, and frankly was amazed and nonplussed simultaneously at the ease and way in which Mr. Somerville decided what then at the moment would be the truth at the time. He confessed that he lied when convenient or necessary to the authorities, including the police and then, whether he realized it or not, to the trier of fact and to the sentencing Court. That is obstruction of justice. That is the quintessence of obstruction of justice.

Tr. of Sentencing at 14, R. Vol. IV. With respect to the firearm enhancement, the court also overruled Somerville's objection, stating the following:

> I, too, listened to the trial evidence. And I would have found by proof beyond a reasonable doubt, not merely a preponderance of the evidence, that during the relevant transaction that the .40 caliber handgun was present, and not surprisingly so. My own conclusion was that Mr. Somerville at that time wanted [Johns] . . . to understand that he was armed, that he did have firearms, and what could be more logical in a gentleman who has chosen a philosophy and a vocation of drug-dealing to warn clients, associates, and the world alike that [he is] armed and dangerous and prepared to protect [his] drug business.

Id. at 15.

The district court therefore adopted the findings and conclusions of the PSR and calculated a total offense level for Somerville of 38, which included the two disputed two-level enhancements. After considering the sentencing factors

contained in 18 U.S.C. § 3553(a), as required by United States v. Booker, 543 U.S. 220 (2005), including the advisory Guidelines range of 324 to 405 months, the district court sentenced Somerville to 324 months.

This appeal followed, in which Somerville argues the district court erred in: (1) adding two levels to his Guidelines offense level for possession of a firearm where "the weapon was not recovered and the only evidence of a weapon was the tape recorded conversation with [Johns]"; and (2) adding two levels to his Guidelines offense level when the court found Somerville had obstructed justice during his trial testimony because "[w]hatever misstatements [Somerville] may have made were minor in comparison to his clear admission to guilt in the crimes for which he was charged." Appellant's Op. Br. at 5. Somerville further argues that, without those two enhancements, his total offense level would have been 34 and, applying the career offender provisions, his Guidelines sentencing range would have been 262 to 327 months. "Had the court determined the guideline ranges correctly, it may have been inclined to impose a lower sentence despite its comments to the contrary." Id.


**DISCUSSION**

Following the Supreme Court's decision in Booker, the Guidelines are advisory. Nonetheless, because sentencing courts are required to "consider" the

properly-calculated Guidelines sentencing range, United States v. Gonzalez-Huerta, 403 F.3d 727, 748-49 (10th Cir.) (en banc) (internal quotation omitted), cert. denied, 126 S. Ct. 495 (2005), we continue to review the sentencing court's factual findings under the Guidelines for clear error and its legal determinations de novo. United States v. Serrata, 425 F.3d 886, 906 (10th Cir. 2005). "We give due deference to the district court's application of the guidelines to the facts." Id. (further quotation omitted). "A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." United States v. Clark, 415 F.3d 1234, 1246 (10th Cir. 2005) (further quotation omitted). We review for reasonableness the ultimate sentence imposed. Booker, 543 U.S. at 261-62 (Bryer, J.) "[A] sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam).

We have carefully reviewed the record in this case and conclude that there is ample evidence supporting the two enhancements found by the district court. Indeed, with respect to the possession of a firearm enhancement, not only does the excerpt [3] from the taped conversation between Somerville and Johns clearly indicate that Somerville had a .40 caliber firearm, but Johns, as indicated above,

---

[3]See supra, note 2.

testified that when he entered the house where the January 16, 2004, drug transaction took place, he saw a .40 caliber weapon "[s]itting on top of a box." Tr. of Jury Trial at 256, R. Vol. VII. We find no clear error in the district court's application of that enhancement.

Similarly, we find no error in the district court's conclusion that Somerville had obstructed justice in this case by lying to police authorities and to the court. Somerville's testimony is riddled with inconsistencies, flat-out contradictions of prior statements, and admissions that he lied to the police at various times about material aspects of their case against him. Moreover, the district court was able to view Somerville while testifying and assess his credibility. The district court's statement in support of the obstruction of justice enhancement makes it very clear that the court found Somerville not credible and had observed him making false statements under oath to the court. As the court noted, that is the quintessence of obstruction of justice.

Aside from his argument that the two challenged enhancements contributed to a longer sentence, Somerville develops no other argument that his sentence was in any other way unreasonable under Booker. We conclude that it was reasonable and the district court followed the dictates of Booker in imposing it.

**CONCLUSION**

For the foregoing reasons, we AFFIRM Somerville's sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge